IBM v. United States Mr. Andre Thank you Judge Rader, and may it please the court, John Cleveland Rand on behalf of the appellants, and I will do my best to save five minutes for the rebuttal. These consolidated trade adjustment act appeals present three issues to the court, and I'd like to begin with the dismissal of Computer Horizons employees that the court will allow me to. It's important to note at the outset that this action was originally brought just on behalf of the former employees of IBM Global Services out of New Jersey. We subsequently got involved in the action, and filed a limited complaint, and added Computer Horizons employees out of Urban, Texas to that complaint. Now we can see that we added them to the complaint outside the 60-day statute of limitations set forth in 28 U.S.C. 2636d. But our failure to do so, at least now as this case presently sits, is legally irrelevant. Labor waived the statute of limitations in 2636d. When it filed its answer, it specifically acknowledged that Computer Horizons plaintiffs and never asserted the statute of limitations. Can you waive a statute of limitations? Oh, I think the default rule in our courts is that statute of limitations, exhaustion, those are permanent effects. Is that different when you work with the federal government where you have sovereign immunity involved? I think it depends, is the answer. In other words, counsel, is it really a statute of limitations, or is it a condition precedent suit? Sure, I understand. In this case, we believe that it's not, and we believe Congress has provided the answer. If you look at the way that Congress laid out the Court of National Trade's jurisdiction, and also laid out this particular statute of limitations, it did so in entirely different provisions in different parts. The D.C. Circuit, in a case called Harding, conducted such an analysis where it said, okay, Congress is going to tell us whether a particular statute of limitations was intended to be jurisdictional. If it's not in the same provision as the jurisdiction conferring – sorry, if the statute of limitations language is not in the same provision as the jurisdiction conferring language, then that tells us Congress did not intend the statute of limitations to be jurisdictional. I didn't cite this case for this particular proposition in my briefs, and I apologize for that, but actually the Supreme Court's case in Zipes v. Trans World America Airlines did the exact same thing. The Court specifically noted on page 394 of that case that in its textual analysis, it was guided by the fact that the jurisdictional provision for filing a discrimination charge – the administrative exhaustion provision and the administrative exhaustion time-filing provision in Title VII. And so it's our position that not all statute of limitations, even in cases involving the government, are jurisdictional. Is there a difference between administrative exhaustion and complying with conditions precedent suit? Suppose you didn't exhaust administratively, is there still a time period within which suit must be brought? I'm sorry, I'm not sure I understand you. Well, we have hidden in here or in here the question of, in the one hand, whether there was rehearing sought. Sure. And then on the other hand, we have the question of whether you can be in court under any circumstance. So that's my point. Okay. Right. The Court of National Trade in this case held that my clients, the Computer Horizons employees, could not file suit because they had not sought optional administrative reconsideration. And perhaps I misspoke there. The Court didn't use the word optional. That's our characterization of it. But Lavery even concedes that the administrative reconsideration provisions in the Code of Federal Regulations are optional, that you get, if you're a TAA applicant, a final determination on your application if you file your petition and get a denial. You do not have to go that extra step and seek reconsideration. And certainly that would affect when you would file suit because if you sought reconsideration, that would take some time and you would be filing suit later. But as far as where the part is jurisdiction, it's legally irrelevant that my clients did not. How do you reconcile 2395A with your position? Because 2395A is a statute that discusses both jurisdiction and timing, right? In the same provision. So how do you reconcile that with the position you were taking? I don't read 2395 as being a provision that actually confers jurisdiction on the CIT over these particular matters. That's in 1581D, I believe. And like I said, that's an entirely different part of Title 28. If we view this as it's been suggested as a precondition to suit, doesn't sovereign immunity play in pretty heavily the government not having consented to suit and therefore place you in a very difficult position? Oh, I would concede that if the court construes 2636D as a jurisdictional prerequisite, then... 2636D says the claim is barred unless brought. How do you construe that language? Is anything other than a precondition to suit? Statute of limitations quite regularly use the term, an action is barred, no action shall lie, no suit may be brought. And that's kind of the language that Congress uses. It's not a language of the jurisdictional bill that would at the same time create a filing deadline between the jurisdiction of the court. Do we have to wait for the Supreme Court on this one? I think you could, in John R. Sandengravel. They bring a cert in that case, it comes from this court, and it seems like they're going to... It's the Tucker Act, but it is barred language again that seems to be dealing with the identical issue. We would have no objection, of course, if the court wanted to hold this case, depending on John R. Sandengravel, because it does seem like after ballots, which address whether the filing of those appeals is jurisdictional, John R. Sandengravel is now going to address whether the initiation of a suit against the government is jurisdictional, so it might be prudent to wait for that case. How do you distinguish Kelly from the case we have today? Pardon? How do you distinguish Kelly from the case we have today? Well, it's our position we don't need to distinguish Judge April, because basically we believe that the Kelly statement was dicta. Well, let me ask you about that, because I saw that in your brief. How can it be dicta when this court has said, because appellants have failed to comply with the terms upon which the United States has consented to be sued, the court has no jurisdiction to entertain this suit, citing Georgetown Steel. That sounds to me like a holding and not dicta. Well, but the issue of whether there is a waiver of the statute of limitations in that case was not for the court. So the court was kind of laying out, in my view, the legal framework and having to say, look, we just voted, but we don't believe that it was a contested issue, and therefore that it was sent to the court's holding or that it was part of the court's holding at all. If I could, as my time is ticking, I'd like to move on to the class certification issue, if I may. That's an abuse of discretion, though, isn't it? Absolutely. How are you going to get by that? I think quite easily. And what I'd like to point out first is that we proposed three narrowing subclasses in this case. And we did so because the leading treatise on class action law said that you propose subclasses to avoid conflicts between class members and to allow the trial court to sever off. But one of the big criteria there is commonality. And isn't it true that you're going to have workers in a lot of different positions in this kind of a suit? Software workers don't all do the same work. They don't produce the same sort of product. Won't that harm your commonality criteria? I don't believe so. First of all, this is a government benefits class action that seeks injunctive and declaratory relief. It was brought under 23b-2, not 23b-1. And as such, the commonality inquiry is more circumscribed. The court just has to look to see whether there's a common legal issue that runs through the claims of all the putative class members. We clearly have that in challenging labor's definition of the term article as it's applied to software workers. And so as long as the CIT can fashion some order that says labor's definition was eroded. But beyond that common issue, you're going to have some software that is for direct sale, some for manufacturing specifications and so forth, which will lead to questions down the line, won't it? So the single issue won't be dispositive. That's correct. But at least as far as the Supreme Court held in California v. Yamasaki, and there are a number of cases that we cite on pages 38 to 39 of our blue brief and 19 to 20 of our reply brief, courts repeatedly, again, particularly in government benefits class action, say, okay, we'll have the court come in for putative class action to be able to answer the common question. And then we'll, you know, after that common question is answered, the cases will be disposed of on an individual basis. But the individual questions that are subsequent to the antecedent common legal question will not make class action an inappropriate vehicle for disposing of this large class, a large number of claims. I guess if I now move on before I ask a further question on class action, I'd like to move on to the attorney's fees issue. It's our position that former employees of Motorola resolved this issue here. The CIT denied our motion for attorney's fees because it believed that we were not developing parties, notwithstanding that after three years of litigation, the IBM employees received exactly what they sought. We believe the CIT erred because as Motorola explains, in a retained jurisdiction case, there are three requirements. Are you relying on a catalyst theory, though, that Buchanan has already laid aside? I'm sorry? Are you relying on a catalyst theory that Buchanan has already disclaimed is not justifying a prevailing finding? Well, it's certainly the government's position that we're – and it was the CIT's position that we are self-confessed catalysts, but that we don't believe we are. We believe that if we were to be found catalysts in this case, it would stretch Buchanan beyond recognition. Buchanan would describe what a catalyst was. It said that someone who quickly filed a suit gets prompt resolution of their issue without any judicial camaraderie whatsoever. That's quite different from what we have here. We litigated for a year at the administrative level, two years at the Court of International Trade, got two remands from the Court of International Trade along the way. So we didn't just quickly file a suit and promptly obtain relief, and there certainly was judicial intervention in the suit that basically forced labor's hand to eventually certify the IBM employees as eligible for trade adjustment assistance. So basically, we believe that if Buchanan were to be held to bar our claims, it would essentially allow the government to tactically moot any case where 11 out of the 12 nails are in their coffin and say, oops, well, we can save ourselves some money by giving these people what they want, notwithstanding that we fought them for two, three, four, five, six, seven years. And we just don't believe that that's what the Supreme Court intended in Buchanan. One other issue I'd like to address with respect to the attorney's piece. The government has argued that even if we weren't mere catalysts, that we don't qualify as the grounding parties because there was an intervening change in law in this case. The two cases from this court in which they relied for that argument are Vaughn v. Principi and Akers v. Nicholson. Both of those cases involved a change in the relevant statute. We didn't have that here, nor did we have an intervening Supreme Court decision, nor did we have an intervening decision from this court. What they claimed was a change in law was really another decision that followed two previous decisions. So it was an extension of the law, but it certainly wasn't a revolutionary decision from a coordinate court. And as laborer self concedes, they weren't bound by that decision. In fact, a couple of times in their red brief, they said, oh, we would have been free to accept the judgment in computer and computer sciences or certify in computer sciences and continue to fight this other case. Wouldn't you also suggest that another difference from Buck-Hannon is the judicial imprimatur on the change? Namely, the CIT basically affirmed that you were the prevailing party for all intents and purposes. Right. I'm glad you pointed that out, Judge Moore. I'm sorry I forgot that point. But yes, you're absolutely right. And I think that's part of the reason why the Motorola test is so easily satisfied here. It's that when you have a retained jurisdiction case, it means it has to go back to the court and the court has to look at what the agency did. Even if the agency is giving the plaintiffs or the claimants everything they want, and the court has to say, is that proper? The CIT did that, as you alluded to, Judge Moore, in this case. And we believe that that's a sufficient judicial imprimatur to kind of get us out from under Buck-Hannon. But to save us more time, we'll go with this. Mr. Pinzero? May it please the court. This court should affirm the lower court's determination because the court lacked jurisdiction to entertain the claims of the Computer Horizons plaintiffs. Certification of the class was improper, and each of these were not warranted. With respect to the Computer Horizons plaintiffs, appellants conceived that it was out of time. The question here is whether this is a matter of sovereign immunity that could be waived. The question comes down to whether it's jurisdictional or a statute of limitations, right? Isn't that basically the inquiry we have to decide between which one it is? That's correct. And the court has already resolved that issue. What about the fact that it's been equitably told? Well, that's an interesting point. Wouldn't that suggest that it's not mandatory and jurisdictional? The court in Sunoco held that notwithstanding its sovereign immunity aspect of its jurisdictional quality, it could still be subject to equitable tolling. It's backwards to say that because it's subject to equitable tolling, it cannot be jurisdictional. The court in Sunoco said that it was jurisdictional, but it could still nonetheless be subject to equitable tolling. Are those mutually exclusive propositions? How could you toll a jurisdictional matter? You don't have jurisdiction. It's over, right? Well, that's what the court was saying was that it didn't diminish the nature of its jurisdictional quality. We disagreed with Sunoco on that ground for that reason, but the binding precedent of this court is that it could still be subject to equitable tolling even though it's jurisdictional in nature. But Stone is a Supreme Court case, right? And ultimately, they're our masters, aren't they? I mean, if Stone says mandatory and jurisdictional, no equitable tolling, don't we have to follow that precedent? Well, the precedent as it stands now is Kelly and Sunoco, which recognizes that it's jurisdictional to the extent that that is now thrown into doubt because of a decision that's pending before the Supreme Court. How do you address the appellant's argument that Kelly is dicta? Well, appellant is focusing on the fact that there wasn't waiver discussed in that case. And of course there was a waiver discussed in that case because the case was discussing whether there could be leniency afforded to these pro se litigants. And precisely because it was jurisdictional, the court held that it could not do so. So it would never even get to waiver because it was holding the parties in that case to the strict sovereign immunity jurisdictional requirements. Do you agree with appellant that we ought to maybe hold this case until the Supreme Court decides to stand a gravel case? No, because this court has already addressed the issue that it's jurisdictional. And I think that to wait for the Supreme Court's holding regarding another statute regarding the language, whether it's barred from suit, I don't think that that would alter the legal landscape that we're operating in. How do you say that? If the Supreme Court would decide that the is barred language is not jurisdictional and this language is substantially identical? Well, that's based on the assumption that the Supreme Court would have this far ranging opinion that would say any statute that has that language would therefore not be considered jurisdictional. Whereas here we're talking about 2636D, which has already been addressed by this court until the court would have that type of analysis. You're reading Supreme Court law pretty narrowly then. They have to address each statute one by one all the way through as to whether they're jurisdictional or not. Well, that's the point. We don't know how narrowly or how broadly the Supreme Court is going to rule in that case. Then why wouldn't we wait and see? That's at the discretion of the courts. But you're telling us not to, and I'm trying to figure out. It's a little counterintuitive. It's based on a supposition that the court might engage in a far ranging holding, and that's a conjecture that we're not willing to make at this point. We're operating under the present legal landscape, and to the extent that the law... And if the present legal landscape changes, then we have made a mistake. Well, it wouldn't be a mistake if it's operating under this particular statute. I mean, it could very well be that it would be distinguishable from a future opinion. We don't know what that landscape will be. And courts operate under those circumstances all the time, and obviously the court also has the discretion to wait. But in this case, there isn't a basis for assuming that the legal landscape will change with respect to 2636D. How important do you think the placement of 2636D in the statute is? Your opponent argues that its placement within the statutory scheme makes it a non-jurisdictional provision. Well, it's irrelevant as far as the jurisdictional aspect is concerned. I mean, because we're talking about whether the government is consenting to be sued. Obviously, the government can place restrictions on when it can be sued. And in this circumstance, the court has already held that it's to be construed strictly precisely for that reason. So whether the court wants to revisit that question and get into statutory construction angels on the head of a pin, as far as placement is concerned, is irrelevant because we're operating under the landscape that is already jurisdictional. Am I understanding your sovereign immunity argument correctly? Tell me. Help me out here. Is sovereign immunity pertinent only to when the government can be sued, or suppose there's absolutely no question the government is consented to sue in a particular case, but only a question over whether the damages should be $100 or $500, and that's a matter of statutory interpretation. Would you say principles of sovereign immunity suggest the government should only pay the $100 because waivers of sovereign immunity ought to be strictly construed, and therefore every liability issue, every damages issue, everything in a statute ought to be strictly construed in favor of the government under principles of sovereign immunity? Are you following me? Maybe I'm contorting. I'm just trying to understand the argument. I think you're referring to there was a dissent in a case that referred to whether that waiver of sovereign immunity was limited to just the damages issue. In the cases that were construing 2636D, they didn't limit it in that fashion, and there's no basis for doing so in this case. Here we're not even talking about damages, so it would be kind of irrelevant. We're talking about certification. The CIT doesn't award damages. It just sustains whether there's certification and then it's through the state courts how much benefits they would be getting. Where I'm just trying to go is how far does sovereign immunity get the government? How far does it get them? Certainly it gets the initial inquiry of can you be sued or can you not be sued, but that's gone here. You agree the government can be sued for a cause of action like this one, right? Correct. Then does sovereign immunity come into play with regard to application of the relevant statute in all avenues, liability, damages, everywhere else? I'm just trying to figure out where I use sovereign immunity as a principle that weighs in favor of the government and where I stop using it that way and just actually evaluate the statute on its face. That the government weighs sovereign immunity doesn't open up the floodgates. Government can also place limitations on the scope of that sovereign immunity, as I'm sure the court would agree, and that can take many forms. It could be in the form of limitation on the type of damages that would be awarded in such a case. Who is able to sue under such cases? And in this case, that's relevant here, when it could be sued. And so I think that the proposition that it weighs in sovereign immunity isn't the beginning of the inquiry. It's the scope of that waiver that we're dealing with. But is the issue when the government can be sued here or when the government has to raise a defense that they weren't properly sued?  Once the court establishes that it's sovereign immunity, it cannot be waived. It is waived by the government when sovereign immunity is waived in order to be sued. And so we've established that it can also delimit the scope of that waiver. It cannot waive its sovereign immunity in the sense that by failing to assert it, that it therefore creates a cause of action that otherwise would not allow. So we're putting the analysis backwards to say, well, whether the government can waive that argument, because that argument is already in place because the suit wouldn't exist otherwise. So tell me, would you say all statutes of limitations are something that we ought to look at with the sovereign immunity lens in place? All statutes of limitations, not just necessarily jurisdictional statutes, but all statutes of limitations are such that the government has not waived sovereign immunity beyond the exact confines defined in the statute of limitations. I think the prudent course would be to, when confronted with a suit against the government, the first inquiry is whether the government has waived its sovereign immunity. And then the court's job is to determine the scope of that waiver. And so, yes, to the extent that the court needs to look at statute of limitations in suits against the government through the lens of a waiver of sovereign immunity, yes, that would be the job. Your argument is, simply put, that 2636D is a waiver of sovereign immunity. And for a party to avail itself of that waiver, it must comply with every provision of that statute. That's correct. Turning to the attorney fees, is this case controlled by Motorola or Vaughan? Both. Those cases were issued in conjunction with one another, and one cannot be read in isolation. But they reached different results. If we go with Vaughan, you win. If we go with Motorola, they win. No, if we go with both of them, the government wins. Tell me how. I'll tell you how, because Motorola recognizes the general principle that if there is no determination on the merits, then they're not prevailing parties. That's the general principle that was not upset by Motorola. So there were three scenarios that Motorola was contemplating there. There was no determination on the merits, determination on the merits with no retention of jurisdiction, in which case they would be prevailing parties, or a determination on the merits with retention of jurisdiction, and in which case they would be prevailing parties only in the circumstance where the agency had afforded them the relief that they had requested. So in this case, we're not dealing with the two scenarios that Motorola had identified where there's a determination on the merits, and we're determining whether there was a retention of jurisdiction. Here, as the lower court specifically disavowed, there is no determination on the merits. The court in its remand determination, initial remand determination, specifically said, I'm not reaching the merits here. The investigation is insufficient for me to even make that determination. And so it remanded for further proceedings, which is precisely the general concept that Motorola was operating under. Motorola did not wash away all the jurisprudence. Did the government request that remand for further proceedings? That's the second point. We did not request the initial remand. The remand was what we had contested the motion for judgment on the administrative record. And the court ruled against us, not on the merits, but on the sufficiency of the investigation as a preliminary matter. The agency conducted that remand, issued a new determination while it was in litigation. A new policy had been issued pursuant to the change in legal landscape. And then the government asked for a voluntary remand in order to bring its determination. Its remand determination had already been issued against the plaintiffs. So what we needed to do was to correct the legal landscape because now we have the new policy that was in place. And so that's why the Department of Justice requested a voluntary remand. What credence should we give to the trial court's judgment on prevailing status here? Well, the award of each of these is reviewed for abuse of discretion. But the legal determinations within that analysis are obviously de novo because it's a matter of law. And so whether the application of Motorola and Vaughn can be reviewed de novo in this case. And in this case, I think we're seeing here why we have the Motorola and Vaughn issues on the same day. In this case, we have the court specifically disavowed having ruled on the merits, which wasn't the case in Motorola. There was just a remand on the very issue that was being contested. And here, you have that area that Motorola was recognizing, this no determination on the merits. And once you proceed from that starting point, you see that they cannot be prevailing parties. And Vaughn specifically recognizes that where there's an intervening change in law, that the agency can have the discretion to request a voluntary remand in order to bring its determination in line with that change in law. And here we have a change in policy. There, appellants are reading Vaughn very narrowly to say, well, it's only where there's a change in statute from Congress. And surely, a court's decision is still law. The question is whether the agency chooses to appeal that and continue litigating that, or whether to change its policy. And it has the right to do so. And otherwise, it would be completely hamstrung and not be afforded the opportunity to reflect changes in the legal landscape. Thank you, Mr. Pinzero. Thank you, Your Honor. Mr. Andre, you have about two minutes left. Thank you. There was a lot of discussion just now about whether statutes of limitations and cases involving the government should be strictly construed. And I think, Judge O'Rourke, you alluded to that in your question to me earlier, and the answer hit me well. And I want to see a council favor. I think the answer lies in Supreme Court's decisions in Irwin and Franconia. In those two cases, the Supreme Court said, statutes of limitations should be applied against the government the same way they should be applied against private litigants. And notwithstanding that the court just issued its decision in Bowell's last term that has some sweeping language that we've taken out of context about the deadline for filing those two appeals, Bowell's left intact. In fact, the majority never once cited Irwin or Franconia. We believe that those two cases basically should answer the question that I think you were getting at, Judge O'Rourke, and that the court and my colleague was discussing earlier about whether sovereignty always requires statutes of limitations to be construed narrowly. It just doesn't. Irwin and Franconia provide that answer. With respect to the EJ application, unsurprisingly, we read Motorola quite differently than the government in this case. We think that Motorola provides a very simple three-part test. In a retained jurisdiction case, if the plaintiffs allege agency error, they get a remand from the court. And when they're successful in remand, that's the end of the matter. It doesn't matter whether the agency or the court have to rule on the merits so that there's some judicial imprimatur on the prevailing issue. Otherwise, it's just a question of timing. The court happens to remand, and the next day the agency changes policy, and there's a windfall on attorney fees. Well, I guess, first of all, in that situation, there wouldn't be many attorneys fees that happen that quickly. But that's why we believe that the language in Buchanan is important to be kind of ready, that Motorola and Buchanan can be read together, because Buchanan talks about prompt relief. If you get prompt relief, then you're a catalyst. In fact, for as I already know, the one uncertain case that the government relies on for the proposition that a voluntary change in policy bars attorney fees. Counsel, didn't Labor review this on the merits and make a determination? That's what I'm a little confused about. I thought they did. I thought Labor reviewed this on the merits and made a determination and certified the claim. They did. They adjudicated it. They looked at this case three times. And then it was reviewed for substantial evidence. That determination. So why is that a judicial imprimatur that would meet the standard? Right. I agree entirely. Thank you. Our next case is Mlecic versus the Department of Veterans Administration.